UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Z.B.,<br><br>  Plaintiff<br><br>V.<br><br>BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC., HARVARD UNIVERSITY, AND THE NETWORK BLUE NEW ENGLAND DEDUCTIBLE PLAN,<br><br>  Defendants | CIVIL ACTION NO. |

## COMPLAINT

### INTRODUCTION

1. Plaintiff Z.B. ("Plaintiff" or "Z.B.") brings this action against Defendants, Blue Cross and Blue Shield of Massachusetts, Inc. ("BCBSMA"), Harvard University ("Harvard"), and the Network Blue New England Deductible Plan (the "Plan") (collectively referred to as the "Defendants"), for violation of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et. seq.* ("ERISA"), and the Mental Health Parity and Addiction Equity Act ("MHPAEA"). Z.B. is a beneficiary of the Plan, an ERISA welfare benefit plan administered by BCBSMA. Harvard University self-funds the Plan.

2. Plaintiff challenges Defendants': 1) failure to provide Z.B. with a full and fair review of his claim; 2) unreasonable and unlawful denial of Z.B.'s claim for residential mental

health treatment benefits despite substantial medical evidence demonstrating Z.B.'s entitlement to said benefits; 3) pattern of rejecting and/or ignoring the substantial evidence supporting Z.B.'s entitlement to coverage; 4) failure to provide a reasonable claims procedure that would yield a decision on the merits of Z.B.'s claim, including violating ERISA's implementing regulations governing the review of appeals; and (5) provision of lesser coverage for in-network inpatient mental health treatment as compared to analogous in-network inpatient medical or surgical treatment in violation of Federal parity law.

## JURISDICTION

3. This Court has personal and subject matter jurisdiction over this case under 29 U.S.C. § 1132(e) and (f), without regard to jurisdictional amount or diversity of citizenship, in that the Plan is administered in this district.

## PARTIES

4. The Plaintiff Z.B. resides in Middlesex County, Massachusetts. At the time of his treatment, which is the subject of this Complaint, Z.B. was a covered minor dependent under the Plan, residing in Massachusetts.

5. The Defendant Blue Cross Blue Shield of Massachusetts, Inc. is a for-profit corporation, with its principal place of business at the Landmark Center, 401 Park Drive, Boston, Massachusetts, 02215-3326. BCBSMA was responsible for administering claims under the Plan and making decisions regarding Plan participants' eligibility for benefits.

6. The Defendant Harvard University is a private university located in Middlesex County, Massachusetts. Harvard University self-funds the Plan.

7. The Defendant Network Blue New England Deductible Plan is an "employee welfare benefits plan" as defined by ERISA, 29 U.S.C. §1002(1). The Plan was issued by BCBSMA and insures Massachusetts residents.

8. At all times relevant to the claims asserted in this Complaint, Defendants purported to act as ERISA claim fiduciaries with respect to participants of the Plan, generally, and specifically, with respect to Z.B., within the meaning of ERISA.

## FACTS

**The Plan**

9. As a Plan beneficiary, Z.B. is entitled to health insurance coverage under the Plan.

10. The Plan provides coverage for "medically necessary" intermediate residential mental health treatment, as follows:

    Acute residential treatment (this is substantially similar to Community-Based Acute Treatment (CBAT) programs described below in this section), clinically managed detoxification services, or crisis stabilization services. These services may sometimes be referred to as sub-acute care services. These services offer 24 hours a day, 7 days a week access to medical services and on-site or on-call nursing staff. Your coverage for these services is considered to be an inpatient benefit.

11. This includes out-of-network coverage of "medically necessary" intermediate behavioral health treatment under certain circumstances, including, without limitation:

    You receive *urgent care* outside of your *service area*,

    or

    Your condition requires *covered services* that cannot be furnished by a health care provider who participates in your health care network and your *primary care provider* refers you to a health care provider who does not participate in your health care network for the *covered services*. In addition to your *primary care provider*'s referral, *Blue Cross and Blue Shield* must approve the referral in writing before you receive the services. You should not obtain any services from a health care provider who does not participate in your health care network until you check with your *primary care provider* or with *Blue Cross and Blue Shield*.

3

**Z.B.'s claim for residential mental health and substance use treatment**

12. From December 6, 2021 until January 25, 2022, Z.B. required mental health and substance use treatment, including intermediate residential treatment at Summit Achievement of Stow, Inc. ("Summit") in Stow, Maine, which is the subject of this lawsuit, as provided under the terms of the Plan.

13. Prior to his admission to Summit, Z.B. had a history of mental health and substance use conditions for which he had previously received treatment.

14. In December 2021, after being suspended from his public high school, Z.B. was admitted to Summit's residential program for treatment of his various professionally diagnosed mental health and substance use conditions.

15. Z.B. was discharged from Summit on January 25, 2022.

16. Summit sent Z.B. invoices, dated December 6, 2021, January 5, 2022, and January 19, 2022, for the cost of his treatment.

17. Z.B. paid each invoice submitted by Summit.

18. On March 18, 2022, Z.B. submitted a claim to BCBSMA for reimbursement of the Summit invoices, attaching a Subscriber Claim Form, the invoices at issue, and relevant medical records from Summit.

19. BCBSMA sent two Summaries of Health Payments ("EOBs") to Z.B., each dated May 8, 2022, indicating that Z.B. was responsible for the full cost of this treatment at Summit. In each case, BCBSMA's explanation was simply that "benefits for these services are not available under the terms of this plan."

20. The EOBs failed to meet the requirements of ERISA, Massachusetts law, and the terms of the Plan relating to health insurance claims that have been denied.

21. On June 29, 2022, Z.B. requested that BCBSMA provide him with a copy of his claim file, including, among other things, all rationales for its decision to deny coverage for his residential treatment at Summit.

22. BCBSMA provided a copy of Z.B.'s claim file to him on July 26, 2022. The file disclosed was devoid of any rationale for BCBSMA's denial of coverage, other than copies of the previously received May 8, 2022 EOBs stating that "benefits for these services are not available under the terms of this plan."

23. On September 20, 2022, BCBSMA confirmed its denial of Z.B.'s claim, providing the following rationale:

    The receipts for [Z.B.] do not have procedure or diagnosis codes. Furthermore, there is no description of the program, what services are included, etc. The receipt lists "Achievement Enrollment Fee" and "Achievement Program", which are not services covered by the plan. Therefore, the claims were denied accordingly.

24. On January 5, 2024, Z.B. appealed Defendants' decision to deny his claim for residential treatment at Summit. The appeal letter included (a) his treatment plan from Summit including goals, objectives and services provided by Summit, and (b) a detailed breakdown of the Summit invoices, including medical diagnosis codes, an explanation of the costs, and a description of the clinical services provided (including individual, family and group therapy) as requested in BCBSMA's September 20, 2022 letter.

25. On January 26, 2024, BCBSMA issued a final denial of Z.B.'s appeal, stating in relevant part:

    The request for coverage of the residential services cannot be approved because <u>pre-approval is required for residential services and no pre-approval was received for the requested services</u>. See pages (24-26) of the Benefit Description.

    Additionally, we could not approve coverage, because based on information provided about this facility and program, Summit Achievement of Stowe, there are no benefits for this service in your health plan's Benefit Description. Your

5

> health plan covers a range of inpatient, intermediate treatments, and outpatient services for the treatment of mental conditions. As part of intermediate treatments, your plan covers acute residential treatment when you need care that is more intensive than typical outpatient care, but you do not need 24-hour inpatient hospital care. <u>Acute residential treatment, sometimes referred to as sub-acute care services, are services that include, at a minimum, the following: 24 hours a day, 7 days a week access to medical services and on-site or on-call nursing staff; daily medication monitoring; psychiatric assessment; individual, group, and family therapy by a licensed mental health provider; and discharge planning</u>. This information can be found in your Benefit Description Part 5 (Covered Services), under Mental Health and Substance Use Treatment. (pages 44-45).
>
> Based on the information we have reviewed, including the information you provided, about this facility and program, <u>it does not constitute acute residential treatment because, for example, it only offers therapy three days per week, with one hour of individual, family, and group therapy offered per week, and monthly medication management</u>.
>
> Therefore, the facility and program is excluded from coverage as your plan states that no benefits are provided for services and/or programs that are not intermediate treatments. "These types of non-covered programs ... may include: therapeutic elements and therapy services; clinical staff (such as licensed mental health counselors) and clinical staff services; and vocational, educational, problem solving, and/or recreational activities. These non-covered programs may have state licensure and/or educational accreditation. But, they do not provide the clinically appropriate level of care required for coverage under this health plan." (page 44)
>
> *<u>We are not questioning the medical necessity of the service or making a medical judgment</u>*. [emphasis added]

26. BCBSMA's January 26, 2024 letter provided further that "this completes the Internal appeal process for this request."

27. Despite offering new rationales for denying Z.B.'s claim, BCBSMA failed to provide Z.B. with the opportunity to respond to the new rationales prior to issuing a final denial of his appeal as required by ERISA.

28. BCBSMA's rationales for denying coverage lack merit.

29. On March 18, 2024, Z.B. requested that BCBSMA provide Z.B. with a copy of his claim

6

file regarding its January 26, 2024 decision to uphold its denial of Mr. Buchheit's claim.

30. On April 4, 2024, BCBSMA provided Z.B. with a copy of his claim file, including a Medical Appeal Case Summary which classified Summit as a "Wilderness/Outward Bound Program."

31. Wilderness/Outward Bound Programs are not excluded from coverage under the terms of the Plan.

32. BCBSMA's internal notes wrongly indicate that Wilderness/Outward Bound Programs are a "benefit exclusion" under the Plan.

33. Summit is an acute residential treatment program designed to treat mental illness. Summit provides the level of treatment required by the terms of the Plan.

34. BCBSMA's claim that Summit does not meet the standard for acute residential treatment required by the Plan was false.

35. Z.B.'s family attempted to obtain pre-approval for acute residential treatment from BCBSMA prior to sending Z.B. to Summit.

36. The only program offered by BCBSMA to Z.B. was a program in Washington State. The program refused to accept Z.B.

**Summary of Defendants' Review of Z.B.'s Claim**

37. Z.B. has exhausted his administrative remedies pursuant to 29 C.F.R. 2560.503-1(1).

38. Z.B.'s eligibility for benefits is based on the substantial evidence in Defendants' possession.

39. BCBSMA's rationales for denying Z.B.'s claim set forth in the May 8, 2022 EOBs and in the September 20, 2022 confirmation of denial were markedly different, and each was completely different from the rationale provided by BCBSMA in its final appeal denial

letter dated January 26, 2024. As such, Z.B. was unable to adequately address the reasoning behind BCBSMA's ultimate denial of his claim.

40. BCBSMA's changing rationales and failure to provide Z.B. with the opportunity to respond to its rationales was unreasonable under ERISA.

41. The statement from BCBSMA in the May 8, 2022 EOBs simply that "benefits for these services are not available under the terms of this plan" was inadequate under Federal and State law.  EOB notices are required to disclose (a) "the specific reason or reasons for the adverse determination," 29 C.F.R. § 2560.503–1(g)(1)(i); see also 211 CMR § 52.07(6)(a) and 45 C.F.R. § 147.136(b)(2)(ii)(E)(3)(b); and (b) "Reference to the specific plan provisions on which the determination is based;" 29 C.F.R. § 2560.503–1(g)(1)(ii); see also 211 CMR § 52.07(6)(b).

42. BCBSMA's January 26, 2024 letter states as a basis for denying Z.B.'s claim that "pre-approval is required for residential services and no pre-approval was received for the requested services." This was the first time BCBSMA informed Z.B. that his claim had been denied for lack of pre-approval.  Additionally, pre-approval is not required under the Plan for "*urgent care* outside of your *service area*."

43. Z.B. was admitted to Summit during a time of acute mental health crisis. The claim file provided from BCMSMA contains no record of any discussion or determination as to whether Z.B.'s admission to Summit constituted "urgent care." In fact, BCBSMA's January 26, 2024 letter specifically states that "We are not questioning the medical necessity of the service or making a medical judgment."

44. BCBSMA's January 26, 2024 letter also states as a basis for denying Z.B.'s claim that "[Summit] does not constitute acute residential treatment because, for example, it only

8

offers therapy three days per week, with one hour of individual, family, and group therapy offered per week, and monthly medication management." This is not the treatment standard for intermediate residential care set forth in the Plan, which states that covered residential programs "offer 24 hours a day, 7 days a week access to medical services and on-site or on-call nursing staff," with no mention of the frequency of therapy or medication management. By imposing this arbitrary, incorrect standard of the need for "therapy three days per week, with one hour of individual, family, and group therapy offered per week, and monthly medication management", BCBSMA is imposing a higher standard than those used to determine whether treatment for medical/surgical coverage for physical conditions is appropriate, which is a violation of MHPAEA.

45. There is no indication in BCBSMA's claim file that they inquired into the details of the services provided by Summit to determine whether Summit's services met the Plan's standards for intermediate residential care, other than simply labelling Summit a "Wilderness/Outward Bound Program" with no further elaboration.

46. BCBSMA also did not provide Z.B. the opportunity to provide details regarding the level of care offered by Summit.

47. The Plan's standard that covered residential programs must "offer 24 hours a day, 7 days a week access to medical services and on-site or on-call nursing staff" is not the standard for residential treatment set forth in the MCG Behavioral Criteria Guidelines for Residential Behavioral Health Level of Care – specifically MGC ORG: B-902-RES-Residential Behavioral Health Level of Care, Child or Adolescent ("MCG Guidelines"). To the contrary, the MGC Guideline specifically provides that a patient may qualify for

9

residential treatment where there is "no anticipated need for around-the-clock medical or nursing monitoring."

48. On information and belief, BCBSMA's network of behavioral health residential treatment facilities is not as well-developed and diverse as its network of medical health residential treatment facilities, which is a violation of MHPAEA. This is not uncommon, as recent studies demonstrate that patients seek out-of-network care twenty times more often for sub-acute behavioral inpatient care than for equivalent medical inpatient care. Nonetheless, the lack of options under the Plan for an appropriate in-network residential treatment program for Z.B. gave him no choice but to seek residential treatment at an out-of-network program.

49. On information and belief, Defendants' termination of benefits was based on inaccurate and incomplete information generated regarding Z.B.'s treatment needs and clinical history.

50. On information and belief, Defendants failed to provide Z.B. with a full and fair review of his claim for benefits.

51. Defendants failed to respond to Z.B.'s attempts to engage in a meaningful dialogue regarding the evaluation of his claim.

52. On appeal, Defendants' physician reviewers made no attempt to respond to or engage with Z.B.'s treating providers' detailed treatment records addressing the appropriateness of his residential treatment at Summit.

53. Prior to making its final decision, Defendants did not provide Z.B. with its physician reviews conducted on appeal as required by ERISA's implementing regulations.

54. On information and belief, Defendants impose a higher level of proof of coverage for

mental health claims, and residential claims in particular, than that required for claims rooted in physical illnesses.

55. Any discretion to which the Defendants may claim they are entitled under the Plan is negated by their failure to provide Z.B. with satisfactory explanations as to their adverse actions as proscribed by ERISA and its implementing regulations.

56. Defendants failed to meet the minimum requirements for the denial of Z.B.'s benefits, in violation of ERISA, 29 U.S.C. § 1133, which requires that upon a denial of benefits, the administrative review procedure must include adequate notice in writing setting forth the specific reasons for the denial of benefits and a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

57. Defendants have also failed to meet the Plan requirements for review of claims that have been denied.

58. The decision to deny Z.B.'s benefits was self-serving, wrongful, unreasonable, irrational, solely contrary to the evidence, contrary to the terms of the Plan, and contrary to law.

59. Due to the unlawful denials of benefits under ERISA, Z.B. suffered significant financial loss.

60. Having exhausted the administrative procedures provided by the Defendants, Z.B. now brings this action.

**FIRST CAUSE OF ACTION**
**(Enforcement of Terms of Plan**
**Action for Unpaid Benefits)**
**(ALL DEFENDANTS)**

61. Z.B. realleges each of the paragraphs above as if fully set forth herein.

62. The Plan is a contract.

63. Z.B. performed all his obligations under the contract.

64. In particular, Z.B. met all of the conditions for the payment of health insurance benefits under Plan, including but not limited to, providing Defendants proof the requested treatment services are a covered benefit pursuant to the terms of his insurance contract. Nonetheless, Defendants have failed to provide Z.B. with the health insurance benefits he is due under the terms of the Plan.

65. 29 U.S.C. § 1132(a)(1)(B) states that:

    A civil action may be brought ---

    1.  by a participant or beneficiary –

        1.  for the relief provided for in subsection (c) of this section, or

        2.  to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

66. The Defendants' actions constitute an unlawful denial of benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

67. Defendants unlawfully denied Z.B.'s benefits in part by failing to provide Z.B. with a full and fair review of its decision to deny coverage for his claim for residential mental health treatment.

68. In accordance with 29 U.S.C. § 1132, Z.B. is entitled to coverage for the medical care he received under the Plan.

69. Defendants refused to provide Z.B. with coverage for the covered medical services received and are, therefore, in breach of the terms of the Plan and ERISA, which requires that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the Plan participants.

70. As a direct and proximate result of this breach, Z.B. lost the principal and the use of the funds expended to pay for the cost of Z.B.'s treatment, which should have been paid by Defendants.

71. Z.B. is entitled to the Massachusetts twelve percent statutory rate of interest due to the loss of the use of the funds expended to pay for Z.B.'s medically necessary treatment at Summit.

## SECOND CAUSE OF ACTION
### (Violation of MHPAEA)
### (ALL DEFENDANTS)

72. Z.B. realleges each of the paragraphs above as if fully set forth herein.

73. At all times herein, MHPAEA was in effect for the Plan.

74. MHPAEA mandates group health plans and health insurance issuers provide parity in coverage between medical or surgical benefits and mental health benefits.

75. Defendants violated MHPAEA by requiring a higher and more onerous standard of proof for mental health benefits as compared to the requirements imposed for medical/surgical benefits.

76. The actions of Defendants, as outlined above, have caused damage to Z.B. in the form of denial of payment for mental health treatment in violation of MHPAEA.

77. Because of this damage, leading to an arbitrary and uninformed adverse benefits decision, Defendants are responsible to pay Z.B.'s benefit under the terms of the Plan.

## THIRD CAUSE OF ACTION
### (Attorney's Fees and Costs)
### (ALL DEFENDANTS)

78. Z.B. realleges each of the paragraphs above as if fully set forth herein.

79. Under the standards applicable to ERISA, Z.B. deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

80. Defendants have the ability to satisfy the award.

81. Z.B.'s conduct of this action is in the interests of all participants who subscribe to the Plan, and the relief granted hereunder will benefit all such Plan participants.

82. Z.B.'s conduct of this action is in the interests of all participants suffering from mental illness who subscribe to the Plan, and the relief granted hereunder will benefit all such Plan participants.

83. Defendants have acted in bad faith in denying Z.B.'s health insurance benefits under the terms of the respective Plan.

84. The award of attorney's fees against Defendants will deter others acting under similar circumstances.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, Z.B., requests this Court to:

(1)    Enter judgment for Z.B. against Defendants;

(2)    Declare, adjudge, and decree that Defendants are obligated to pay Z.B. for his treatment at Summit;

(3)    Order that the Defendants make restitution to Z.B. in the amount of all losses sustained by Z.B. as a result of the wrongful conduct alleged herein, together with prejudgment interest;

(6)    Award twelve percent interest, costs, and attorneys' fees to Z.B.; and

(7)    Award such other relief as this Court deems just and proper.

Date: December 10, 2024

Respectfully submitted,

Z.B.
By his attorneys,

/s/ Mala M. Rafik
Mala M. Rafik
BBO No. 638075
ROSENFELD & RAFIK
184 High Street, Suite 503
Boston, MA 02110
T: 617-723-7470
F: 617-227-2843
E:  mmr@rosenfeld.com

/s/ Patrick L. Glenn
Patrick L. Glenn
BBO No. 641795
ROSENFELD & RAFIK
184 High Street, Suite 503
Boston, MA 02110
T: 617-723-7470
F: 617-227-2843
E:  plg@rosenfeld.com